**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Kent L. BUCKNER, Defendant–Appellee.**

**No. 95–3681.**

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1996.

Decided July 23, 1996.

---

Thomas Edward Leggans (argued), Office of the U.S. Atty., Criminal Div., Fairview Heights, IL, for Plaintiff–Appellant.

Dorothy D. Danforth (argued), William P. Grant, Margulis & Grant, St. Louis, MO, for Defendant–Appellee.

Before POSNER, Chief Judge, and ROVNER and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

A motion in limine, requiring a ruling on the morning of the scheduled start of a jury trial, can wreak havoc in a district court. It did in this case, and as it turned out, the trial was jettisoned. So today we consider an evidentiary ruling made the morning Kent Buckner and a codefendant, Kevin Holt, were set to face a jury on an indictment charging that they conspired with James Salamanca to knowingly transfer a machine gun in violation of federal law.

The indictment alleged that the conspiracy to illegally transfer the machine gun existed from the summer of 1992 until May of 1993. Ten days before the scheduled start of his trial, Buckner filed a motion in limine seeking to prohibit the government from playing tapes of conversations he had with coconspirator Salamanca after the conspiracy ended. In the recorded conversations, which began shortly after Salamanca's arrest in August of 1993, Buckner and Salamanca discuss or make reference to, among other things, the transfer of the machine gun named in the indictment. The taped conversations ended in November 1993, when Buckner was arrested. The tapes also detail Buckner's ultimately successful attempt to procure and transfer other illegal items—certain firearms and military explosives—to Salamanca. Buckner maintained that this evidence was too remote in time and dissimilar in content to be relevant to his case, and even if it was relevant, it should be excluded under Rule 403 of the Federal Rules of Evidence because its prejudicial effect outweighed its probative value. The recordings have been variously described as 31 tapes covering 5 hours by Buckner and 12 tapes covering about an hour and 15 minutes by the government. Because the government only wants to use 25 percent of the time (assuming Buckner's estimate of 5 hours to be accurate), a lot of objectionable and perhaps immaterial discussions are probably not within the government's projected trial plan.

After a short hearing on the morning of the scheduled start of the trial, during which neither the defense nor the prosecution detailed what exactly was said on the tapes and the tapes themselves were not actually played, the district court granted the motion to keep them out, stating:

> The defendant Buckner's motion in limine is ruled upon as follows: The Court is in agreement with Mr. Leggans' argument on

relevance. I think that the conversations would be relevant to the issues in this trial. The Court also agrees with Mr. Leggans on the proof necessary. The Court is of the opinion that the evidence of acts done after the alleged indictment are relevant, are of the type of the proof necessitated by this crime and are also substantially prejudicial to the defendant and as such the nature of unfair prejudice and confusion under 403 and 404(b) dictates to the Court that the Court must exclude the evidence. After a short break in the proceeding the government filed this interlocutory appeal of the judge's ruling, and the jury trial was off the calendar. The potential jurors, the attorneys, Buckner and Holt, and the witnesses in the case were sent home.

The morning docket of a district court judge is usually quite busy. Typically, a judge has a few status conferences in civil cases, a sentencing or two, and perhaps some miscellaneous matters like probation reviews and telephone conferences. The time pressure on the judge can be considerable on mornings like this, and things can get particularly intense if a jury must be selected after the docket is finished. And the mechanics of the jury trial itself present concerns: how many potential jurors are needed? are other judges in need of the pool of jurors? how should the preemptory challenges be allocated between the defendants? how long will it take to select the jury? when will testimony actually start? with this case actually going on (a change of plea at the last minute is not unheard of) should the trials scheduled later in the week be removed?—the list could go on and on.

Resolving motions in limine, considering the mix of other concerns on the morning of the scheduled start of a trial, further intensifies the time pressure on the trial judge. Some motions in limine present serious problems because they ask for an evidentiary call before the judge really knows enough about the context of the case to make a reasonable ruling. Some, like the one here, may involve a lot of time, for the judge may need to listen to the tapes before ruling. Anyway you cut them, motions in limine can create headaches for district judges. While some of them, we

concede, can help expedite litigation, the best way to deal with many of them is usually to reserve ruling and get the trial on the road, for many times, what appears to be vitally important before the start of trial, becomes less so once the case starts moving. That approach, plus a general presumption of admissibility of evidence, is usually advisable. But there is no one correct way to address all motions in limine and, with these observations out of the way, we turn to the issue raised on this appeal.

■ Any statements Buckner made to Salamanca about the machine gun named in the indictment are not Rule 404(b) evidence. They are direct evidence bearing on the charge of whether he knowingly conspired to transfer the specifically named weapon. That the statements may have been made after the close of the conspiratorial period is immaterial. And, it goes without saying that statements about the weapon mentioned in the charge easily fit under the generous definition of relevant evidence—evidence having any tendency to make the existence of any fact more probable—noted in Rule 401.

■ Other statements by Buckner during his conversations with Salamanca that relate to the illegal transfer of other firearms and destructive devices (Buckner, it is claimed, was illegally transferring military weapons and explosives) are 404(b) evidence relevant and admissible if offered for one of the legitimate purposes specified in the rule. "Intent" is the purpose here because the charge against Buckner (despite his lawyer's statement to the contrary during the limine motion hearing) requires the government to prove specific intent beyond a reasonable doubt. *See Staples v. United States,* 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994).

The exclusion of the portions of the taped conversations where Buckner makes either direct or indirect reference to the transfer of the machine gun named in the indictment cannot be justified. Sure it's prejudicial to Buckner, but exclusion requires that it be *unfairly* prejudicial. Why would it be unfairly prejudicial? If a defendant charged with bank robbery recalls details of the crime

in a conversation five years after the act is committed, it's hard to see how he is treated unfairly if the jury gets to hear his statement.

Discussions concerning the illegal transfer of other military weapons, considering the charge in the indictment—which relates, says the government, to a military weapon—are presumptively admissible under the test established in *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), and followed in *United States v. Jackson*, 886 F.2d 838 (7th Cir.1989). Because the government must prove that Buckner acted with specific intent when he allegedly conspired to illegally transfer the named machine gun, his willingness to illegally transfer other similar items is highly relevant. We also do not think that four to six months after the charged crime is so remote that the evidence is stale. Lastly, the other transferred items allegedly discussed on the tapes appear to be reasonably similar to the weapon named in the indictment. It would be a different story if Salamanca and Buckner were discussing the illegal transfer of stolen convertible debentures.

We believe in this case that insignificant attention was given to one of the important qualifiers in Rule 403. To be excluded, the prejudicial effect of the offered evidence must *substantially* outweigh its probative value. While we can't say precisely when that point is reached in any case, it wasn't reached here. The wholesale exclusion of all this taped evidence, before hearing it and considering it in context, was an abuse of discretion. Accordingly, the decision of the district court must be reversed.

ILANA DIAMOND ROVNER, Circuit Judge, concurring.

I fully agree that the district court abused its discretion by excluding all of the proffered evidence without reviewing the tape recordings. I write separately only to offer a brief defense of motions in limine, for I do not view such motions in the same light as do my colleagues. In my experience, motions in limine serve a very useful purpose in streamlining trials by settling evidentiary disputes in advance, rather than allowing trials to be interrupted in mid-course for the consideration of potentially lengthy and complex evidentiary issues. I also believe that, where possible, such motions should be resolved in advance of trial so as to eliminate the prospect of confrontations over the admission of evidence occurring in the jury's presence. I recognize, of course, that it may sometimes be prudent to reserve ruling until the evidence relevant to the motion has been offered at trial. That is a judgment call for the district court to make.

I also agree that judges are busy on the morning of trial and that a motion in limine made for the first time at that point is not entirely welcome. This motion, however, was filed ten days in advance of trial, and the district judge gave no indication that the timing of the motion prevented the court from giving it due consideration. Indeed, I am confident that district judges are well-equipped to issue appropriate scheduling orders to insure that they have sufficient time to rule on pretrial motions. I therefore see no need for the majority to comment on the proper handling of motions in limine that are presented to the judge so close to the first day of trial as to wreak havoc with the court's schedule. That simply did not occur in this case.